CITY OF MORRISTOWN, Plaintiff-in-Error, v. ROY T. SAULS, Defendant-in-Error.—457 S.W.2d 601.

Western Section. October 17, 1969.

Rehearing Denied December 8, 1969.

James K. Miller, Morristown, for plaintiff in error.

Donald B. Oakley, Capps & Oakley, Morristown, for defendant in error.

CARNEY, P.J. (W.S.). The City of Morristown has appealed from a $7,000 judgment of the Circuit Court

based on a jury verdict in favor of the petitioner below, Roy T. Sauls. The jury awarded Mr. Sauls $7,000 as damages representing the cost of moving certain tool and die shop equipment located in a building owned by Charles Stephens and sister. This award was made under T.C.A. Section 23-1414. The City of Morristown had ordered the property of Charles Stephens and his sister, Katherine Anne Stephens, condemned under the authority of T.C.A. Section 6-1007. A board of appraisers was named by the Board of Mayor and Aldermen to determine the value of the various parcels of land to be taken and the incidental damages, if any, resulting to the property owners as a result of such taking.

The value of the property of Charles B. Stephens and sister, Katherine Anne Stephens, taken was determined to be $35,559 for about 2½ acres out of the center of a 7-acre tract located in the Town of Morristown on U. S. Highway 11E. Charles B. Stephens and sister were unwilling to accept the amount of the appraisers and filed a petition in the Circuit Court of Hamblen County for writs of supersedeas and common law certiorari which were granted by the Circuit Judge.

The petitioner, Roy T. Sauls, intervened in the Circuit Court by petition averring that he was the holder of a leasehold for one year by verbal agreement in the building of Charles Stephens and sister to be condemned by the City of Morristown; he further averred that he had been given no voice in the selection of the appraisers, had had no formal notice that condemnation was being contemplated and no opportunity to present evidence to the board of appraisers; further that the City of Morristown had made no provisions to pay him for the loss of his leasehold or pay him for the cost of removing his heavy

equipment and machinery from the real estate to be taken by the City of Morristown. He also prayed for and was granted writs of certiorari and supersedeas which were issued by the court. Before the hearing the writs were dissolved and the City of Morristown issued writ of possession for the property.

Hearing was had before the court as to the value of the property taken and the damages sustained by the several landowners. Charles B. Stephens and sister were awarded $80,000 for the value of the property taken and $20,000 for incidental damages making a total of $100,000. Their award has not been appealed by the City of Morristown.

The City of Morristown denied that petitioner Mr. Sauls had a verbal lease on the building. The City insisted that he was only a tenant from month to month and denied that he was entitled to recover anything for the cost of moving his equipment. The jury found for Mr. Sauls.

The City of Morristown has filed only two assignments of error: No. I insists that the Trial Judge erred in refusing the City's motion for a continuance because the City had been denied an opportunity to take the pretrial deposition of W. H. Durman, an expert witness used by petitioner Sauls to establish the cost of his removal expenses; No. II avers that the Trial Judge erred in overruling the City's motion for a directed verdict because the evidence did not show that Sauls had such interest in the Stephens property as to entitle him to removal expenses.

On Wednesday before the trial on the following Tuesday, December 10, 1968, the City took the pretrial deposition of petitioner Sauls and learned that Sauls had

sought estimates for removal expenses from the Metler Company of Knoxville, Tennessee. The attorney for Sauls stated on this occasion that the petitioner Sauls would probably not use any expert witnesses as to the cost of removal but if there were any change in this decision, the attorney for the City of Morristown would be notified. At 4:00 P.M. on the day before the trial the attorney for Mr. Sauls advised the attorney for the City of Morristown that he proposed to use Mr. Durman of the Walters Machine Shop as an expert witness. By that time it was too late for the City to take the discovery deposition of Mr. Durman and prepare its case accordingly. The City of Morristown requested a continuance of the case against Sauls and also asked for a continuance in the case against Charles Stephens and sister.

In overruling the motion for a continuance the court said as follows:

"THE COURT: Well, I believe I'll overrule the motion. I think both sides have had time to prepare and if one side is waiting to use a discovery and you wait until the last minute it wouldn't be a legal ground for a continuance. Both sides have had time to prepare their own proof along that line."

The general rule is that a party seeking a continuance for want of preparation for trial must show diligence and in order to entitle him to a reversal because of the refusal of a continuance he must show not only that he was not prepared but also that a new trial would probably change the results. Hunt v. Hoppe, 22 Tenn.App. 540, 124 S.W.2d 306.

In the case at bar the City introduced testimony of W. A. Stern who was superintendent for the W. J. Savage

Company of Knoxville. Mr. Stern's description of the Savage Company is as follows:

> "We are a large machine shop, structural steel, foundry — we manufacture machine tools, coal mine equipment, flour and feed mills, stone working equipment, frozen food equipment, general repairs—anything from a clock to a locomotive."

Mr. Stern estimated the cost of moving Mr. Saul's equipment at $1,000 plus room and board and mileage for two men in Morristown for six days.

The defendant, City of Morristown, also introduced the testimony of Mr. E. B. Draper who had twenty years' experience with the A. J. Metler Company of Knoxville which was one of the firms Mr. Sauls testified in his discovery deposition as having consulted. Mr. Draper estimated the cost of moving at $3,750.

Mr. Sauls estimated his cost of moving to be approximately $12,000 and Mr. Durman estimated the cost to be approximtaely $11,000. The jury agreed on $7,000.

We hold that the Judge did not abuse his discretion in denying a continuance and that the evidence in this Court on appeal does not indicate that there would probably be a different result if the cause should be reversed for a new trial. Therefore, assignment of error No. I is respectfully overruled.

With reference to assignment of error No. II we are cited to no case in which a person occupying property under a verbal agreement has been allowed or denied moving expenses in a condemnation proceeding. We copy pertinent sections of the Code as follows:

"23-1406. *Parties defendant.*—All parties having any interest in any way in such land or rights may be made defendants, and the proceedings shall only cover and affect the interest of those who are actually made parties, unborn remaindermen being, however, bound by proceedings to which all living persons in interest are parties."

"23-1414. *Elements of damages.*—In estimating the damages, the jury shall give the value of the land or rights taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages. Where the removal of furniture, household belongings, fixtures, equipment, machinery, or stock in trade is made necessary by the taking, the reasonable expenses of such removal shall be considered in assessing incidental damages."

Mr. Stephens, one of the owners of the property, testified that he was very anxious to get Mr. Sauls as a renter of his metal building; that he, Stephens, spent considerable amount of money making it usable by Mr. Sauls including the installation of a bathroom and many electrical connections. Mr. Stephens testified that he told Mr. Sauls he could stay there indefinitely as long as he paid his rent.

Mr. Sauls testified that he began moving into the building in the middle of August, 1967, and it was not until up in September, 1967, that he got into operation; that Mr. Stephens came by sometime during the month of September and told him that he was going to give him the first month's rent and said, "Well, he said, suppose I charge you $85.00 per month for the building here, and then

after you have started about a year or so we'll see then how that works out and if you want to stay on then we'll make some kind of an agreement.''

Mr. Sauls testified that he had been experienced in the tool and die business since 1928 and that he was also the Pastor of the First Church of God in Morristown; that the tool and die business requires the most precision of all metal working; that the machines have to manufacture products requiring 1/10,000 of an inch tolerance; that some of his customers were American Enka Corporation, Magnavox, and Bowsers of Greeneville, Tennessee. Further, he testified that great dollar loss occurs when some of the machines get out of level a fractional part of an inch; that among the major pieces of equipment he had were two 14 inch lathes, 14 inches between centers, one 12 inch lathe, 36 inches between centers, and a grinder, milling machine, vertical and horizontal, a large press, a large welder and large storing racks, bins, iron tables and air compressors. Further, he testified that Mr. Stephens, as an inducement to get him to move into the building, paid for a substantial portion of the initial installation expenses.

Mr. Sauls filed his intervening petition in the Circuit Court on August 16, 1968. The City of Morristown replied on August 29, 1968. The Circuit Court of Hamblen County issued a writ of possession on September 10, 1968. Mr. Sauls was still in the building at the time of the trial with the permission of the City of Morristown. The Trial Judge refused to determine just what legal estate Mr. Sauls had in the Stephens property but held that he had such interest as would permit Sauls to recover moving expenses under T.C.A. Sections 23-1406 and 23-1414.

■ The City of Morristown insists very strongly that the admission by Mr. Stephens that he would not have put any pressure on Mr. Sauls to stay if Mr. Sauls had elected to move before the year was out indicates that Mr. Sauls was only a tenant from month to month. Mr. Stephens stated that he would have hated very much for Mr. Sauls to leave. In our opinion the fact that he would not have pursued any legal remedy to hold Mr. Sauls to a contract does not convert a one year verbal lease into a tenancy from month to month. The writer of this opinion recalls that in the case of Rich Printing Co. v. McKellar's Estate, 46 Tenn.App. 444, 330 S.W.2d 361, the owner of Rich Printing Company testified that he would never have filed a suit against Sen. McKellar personally for the collection of a printing bill incurred by Sen. McKellar's campaign manager. He further testified that if Sen. McKellar had not left a large estate he would never have filed a suit against the estate. The Court of Appeals, with the writer dissenting (330 S.W.2d 959), upheld the validity of the claim and allowed a recovery against the estate of Sen. McKellar.

■ In the case at bar we hold that the preponderance of the evidence is that Mr. Sauls had a verbal lease for one year beginning October 1, 1967. We further concur with the Trial Judge that as the holder of such leasehold Mr. Sauls was entitled to recover moving expenses under T.C.A. Section 23-1414. Assignment of error No. II is also respectfully overruled.

The judgment of the lower court will be affirmed with interest and the City of Morristown taxed with the costs in the court below and in this court.

Matherne and Taylor, JJ., concur.

## PETITION TO REHEAR DENIED

CARNEY, P.J. (W.S.).

On October 17, 1969, this Court announced an opinion affirming the judgment of the lower Court for $7,000 in favor of the respondent, Roy T. Sauls, as damages representing the cost of moving certain tool and die shop equipment located in a building in Morristown, Tennessee, owned by one Charles Stephens and his sister. The judgment was based on the authority of T.C.A. Section 23-1414.

The petitioner, City of Morristown, has filed a petition to rehear and in support thereof a motion to file in this Court the certified copy of an order entered in the cause of Charles B. Stephens v. City of Morristown in the Circuit Court of Hamblen County of date October 10, 1968. The case of Stephens v. City of Morristown was an original suit involving the condemnation of the building owned by Charles Stephens and his sister. The respondent, Roy T. Sauls, filed an intervening petition asserting his rights for compensation of moving expenses under T.C.A. Section 23-1414.

Upon the trial below in the case of City of Morristown v. Sauls, the insistence of the City of Morristown was that Mr. Sauls was only a tenant from month to month and that he did not have a year's lease on the building, verbal or otherwise, and that, therefore, he was not entitled to damages for the cost of moving his equipment. The lower Court and this Court ruled adversely to the contentions of the City of Morristown.

By the petition to rehear the City of Morristown seeks to bring into the case for the first time a new defense,

namely that Sauls is not entitled to compensation for moving expenses because he was not dispossessed until after the termination of his verbal lease.

As a general rule appellate courts will not grant relief which was not asked for or granted below and which was sought for the first time in a petition to rehear. Nashville v. Wilson, 88 Tenn. 407, 12 S.W. 1082.

Absent any exceptional circumstances a petition for rehearing will be limited to a consideration of the record, the petition and briefs, if any, without oral argument. Rule 22, Court of Appeals.

In the case of Ford v. State of Tennessee, (1962), 210 Tenn. 105, 355 S.W.2d 102, 356 S.W.2d 726, our Tennessee Supreme Court held that it could not consider on a petition to rehear matters which it could not consider on the original hearing.

It does not appear that the order in the case of Stephens v. City of Morristown sought to be filed in this Court was ever considered by the Trial Judge in the trial of the present cause. The order was not signed by the solicitor for respondent, Roy T. Sauls. Therefore, treating the motion to file the certified copy of the order as being in effect a suggestion of diminution of the record, we hold that the motion to file must be overruled (1) because the order is not shown to be a part of the record in this cause, and (2) the motion is filed too late. Vaughn v. Gill, (1953), Tenn., 264 S.W.2d 805.

Rule 20 of this Court requires the suggestion of diminution be made before the case is called for trial or the imperfection of the record will be waived.

The petition to rehear is therefore respectfully denied.

Matherne and Taylor, JJ., concur.