Caruthers, J.,
delivered the opinion of the Court.
The complainant filed her bill against her husband, George Boils, for divorce and alimony, on the 27th November, 1857, in the Chancery Court of Hawkins. There was a prayer and fiat on the same day, for an injunc-' tion, but the same was not issued until the 2d June, 1858, the complainant not having given security until that time. Sanders purchased the land 24th December, 1857, and his deed was registered on the 28th of the same month; and on 2d February, 1858, an amended bill was filed against him to set aside the sale and subject the land to her decree. It is admitted that both Sanders and Boils had full knowledge of the filing of the bill and the fiat for the injunction. There can be no doubt but that the object of Boils was to defeat his wife’s claim for alimony, and that Sanders was conscious of his purpose. The divorce was obtained, and alimony, allowed, at the May Term, 1858. The question now is, whether the land can be made subject to it, under these circumstances. The Chancellor thought it could, and so decreed. It is insisted that this is erroneous.
The land was sold under its value, and with a full knowledge on the part of Sanders, of the pendency of the bill, and the order for an injunction.
We need go no further than our own case of Farns-worth vs. Fowler, 1 Swan, 5, to show that the effect of an injunction ordered, is just the same before its issuance *286 as after, upon those who have knowledge of the order. If that be so, a sale of the land was involved, and leaves it subject to the claim of the complainant. But that case requires that the injunction should be issued without unnecessary delay. And 3 Dan’l Ch. Pr., 1909, and 18 Verz., 522, are cited to show that such a delay as intervened in this case between the fiat and the issuance of the injunction, would be unreasonable, and deprive the complainant of its benefit, and save defendants from its effects. That might be so under some circumstances. But in this case, the delay was produced by the difficulty on the part of complainant to give the necessary security. Sanders was applied to by the solicitors of complainant, on the 26th November, to become her security for the process, as he was a close neighbor, - and she an injured, unprotected woman. But he refused, and discouraged the proceeding. He was a deputy sheriff, and it appears gave information to the defendant, of the facts communicated to him, and on the next day wrote, and perhaps, posted up on the Court House door for the defendant, a written warning to all persons against crediting, or in any way aiding or assisting his wife, the complainant. On that day, the 27th November, Sanders was informed of the fiat for an injunction. It is made very probable from the evidence, that he was instrumental by these proceedings, and otherwise, in putting it out of the power of complainant, to give the necessary security for the injunction. He was the friend, and adviser of defendant in the whole matter, and kept him fully informed of the proceeding. It would be outrageous to hold under this state of facts, that the delay of even five months in the issuance of the process of injunction, *287 should relieve him from the effect of his notice of the-order for it. The proof makes it too clear for controversy, that the object of Boils as well as Sanders, was to defeat the claim of the plaintiff upon the land, for the alimony that might be, and was decreed to her.
2nd, But there is another ground in this case, that would produce the same result, without the injunction. Here was a claim set up by bill, filed on the 27th Nov., 1857, for a divorce and alimony, out of the estate of defendant, of which the parties had actual notice, independent of. the construction notice upon filing the bill, and without reference to the doctrine of lis pen-dens. This land, with other things, is claimed, in the bill, to be liable to such alimony. The defendant, avowedly, to avoid such claim, sells his land to one who has full knowledge of all the facts, as well as the object and intention of the husband to avoid the claim of his wife; and to enable him to do so, becomes the purchaser of his land. Can such a sale stand in her way, when she obtains her decree, even if a full price was paid? It would be contrary to all sound principles, both in law and morals, to allow such a combination to defeat the just claims of another, to succeed. It is everywhere held, that, a purchase, of property, made to aid a debtor to defeat his creditors, cannot stand, but will be set aside in favor of the latter, as a fraud upon his rights. The law is the same where the object concurred in by both parties, is to defeat a recovery of damages for an injury sustained: Farnsworth vs. Bell, 1 Head, 531. Is not this case as strong, nay, stronger, and more meritorious than either of the others? It is the claim of an injured and suffering wife, for support and maintenance *288 for herself and helpless children, which is attempted to be defeated by a combination with her unnatural husband, to get his property out of the reach of the law.
Upon both, or either of these grounds, the decree of the Chancellor may be maintained.
It will, therefore, be affirmed, with costs, and the cause remanded for its execution.