IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 2000 Session

## IN RE: ESTATE OF BERNIE F. RIGGS (DECEASED)

**A Direct Appeal from the Chancery Court for Dyer County**
**No. 95P83; The Honorable Lee Moore, Chancellor**

---

**No. W1999-01905-COA-R3-CV - Filed August 10, 2000**

---

This appeal arises from a dispute over the disposition of the assets of Bernie F. Riggs ("Husband"). Plaintiff Julia Mae Riggs ("Wife") filed suit, alleging that Defendant Campbell ("Daughter") had used undue influence and had improperly disposed of Husband's assets through a power of attorney. The trial court found in favor of Daughter, holding that all transactions were valid and in accordance with Husband's wishes. Wife appeals.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., and LILLARD, J., joined.

Earl F. Johnson, John W. Palmer, Dyersburg, Attorneys for Appellant

Thomas E. Weakley, Dyersburg, Attorney for Appellees, the seven surviving children of Bernie F. Riggs

William T. Jordan, Jr., Dyersburg, Attorney for Appellee, Joyce Campbell, Executrix of the Estate of Bernie F. Riggs

### OPINION

Following the death of Husband, Wife filed a Notice and Petition for Statutory Property, Year's Support, and Elective Share.[1] Wife later filed two amended petitions, alleging that part of Husband's assets had been improperly disposed of by Daughter. Wife alleged that Daughter lacked proper authority and exerted undue influence on Husband in conducting several monetary transactions prior to Husband's death. In particular, Wife claimed that a two thousand dollar check written to Daughter and two certificates of deposits (CDs) were properly part of the marital estate.

---

[1]Wife's petition is based on Tenn. Code. Ann. §30-2-101, -102, and §31-4-101.

A hearing on these issues was held on June 30, 1998.[2]  In addition to testimony offered by the parties, the trial court viewed a video of Husband in which he talked about the desired disposition of his estate. Following the trial, both parties submitted supplemental memorandum. The trial court found in favor of Daughter, holding that there was no undue influence and that the transactions were valid and in accordance with Husband's wishes. The trial court did, however, grant Wife her year's support. Wife appeals based on the following facts.

Husband and Wife were married on July 2, 1960. Although Husband and Wife did not have children together, both parties had children from previous marriages.  Throughout the course of the marriage, the couple maintained their separate assets, with each party paying half of the couple's shared living expenses.  On July 17, 1991, Husband executed his last will and testament, devising all certificates of deposit and his checking account to his living children.  At that time, Husband had CDs in survivorship accounts providing for payout of fifteen thousand dollars to each of his eight children upon his death.

Due to the couple's age and infirmity, Daughter assumed the primary responsibility of caring for the day to day needs of Husband and Wife in the years prior to Husband's death. In the fall of 1994, Husband was diagnosed with terminal cancer and given a life expectancy of about three months. Shortly after Husband was diagnosed, Husband's children gathered to hear Husband's wishes regarding his estate.[3]  At this meeting, Husband expressed his desire that the majority of his assets, including his CDs and checking accounts, be divided among his children.  All of Husband's desires were consistent with his previously executed will.

Husband appointed Daughter through a general power of attorney on April 26, 1995.  At the time of appointment, the purpose of the power of attorney was to allow Daughter to take care of a legal matter regarding some of Husband's rental property.  One of Husband's children predeceased him on May 28, 1995. On June 1, 1995, Daughter, acting under Husband's instruction and pursuant to her power of attorney, took the deceased child's name off of the CDs.  Daughter discovered that the names of some of Husband's other children had been inadvertently left off the CDs.  Daughter added these names to the CDs pursuant to Husband's wishes.

Daughter created an additional CD in the name of three of her siblings under Husband's direction. In order to fund this CD, Daughter wrote a check from one of Husband's checking accounts.  Daughter was an authorized signatory on this checking account. This new CD in combination with the previous CDs, would provide an equal payout of around twenty thousand dollars to each of Husband's seven surviving children upon his death.

---

[2]We note that two of Husband's grandchildren were allowed to intervene in the action based on their claim that Husband had intended to create a Totten trust in favor of all his heirs. The grandchildren's claim was later dismissed by the trial court and was not appealed.  Accordingly, this claim will not be addressed.

[3]A video tape of this meeting was viewed by the trial court.

In July of 1995, under Husband's instruction, Daughter wrote a check for two thousand dollars to herself from one of Husband's accounts. According to Daughter, this money was a birthday present for Daughter and her husband and payment for some of the expenses Daughter had incurred. Wife was present when this incident took place.

Husband passed away on August 7, 1995. The CDs and contents of Husband's checking account passed to Husband's children by right of survivorship. Thereafter Husband's will was admitted to probate, and Daughter was appointed executrix of the estate pursuant to the will provisions. Daughter kept detailed records of her actions as executrix and provided thorough accountings to the court.

Shortly thereafter, Wife initiated the action from which this appeal stems. On appeal, Wife asserts that the trial court erred in finding that Daughter did not exert undue influence on Husband. In addition, Wife asserts that the court erred in excluding part of Husband's assets from the marital estate.

## ANALYSIS

As a preliminary matter, we note that the actions complained of by Wife were not performed by Daughter in her role as executrix of Husband's estate. Both the writing of the two thousand dollar check and the CD transactions took place prior to Husband's death. The actions complained of occurred while Daughter was serving as attorney-in-fact for Husband, pursuant to the power of attorney. With this in mind, we now turn to the issue on appeal.

It is widely recognized that a person authorized to act on behalf of another by virtue of a power of attorney has a confidential relationship with the person who executed the power of attorney. See Mitchell v. Smith, 779 S.W.2d 384, at 389 (Tenn. Ct. App. 1989) citing In re Elam's Estate, 738 S.W.2d 169, 173 (Tenn.1987). The existence of a confidential relationship between parties together with a transaction by which the dominant party obtains a benefit from the other party, gives rise to a presumption of undue influence. The presumption of undue influence is rebuttable by proof of the fairness of the transaction established by clear and convincing evidence. Matlock v. Simpson, 902 S.W.2d 384, at 386 (Tenn. 1985).

In order for the presumption of undue influence to arise, the dominant party must be obtaining a benefit from the party bestowing the power of attorney. In theory, the dominant party, through the exertion of undue influence, is forcing the submissive party to take action to benefit the dominant party. The facts in this case are not analogous to the example given above. In the case at bar, Daughter did not coerce Father into taking action regarding the CDs and two thousand dollar check. Instead, Daughter took action on behalf of Father at his request. Therefore, we are unpersuaded that Daughter's actions are governed by the undue influence analysis. The only action that could conceivably be subject to an undue influence analysis is Father's initial action in granting Daughter a power of attorney. Since no party has raised this issue in regard to undue influence, we find it unnecessary to address it.

From our review of the record, it seems clear that Father intended that his children receive all of the money held in his CDs.  This intention was expressed both in Father's will and the videotaped discussion with his family.  Furthermore, we find it unlikely that Daughter acted improperly in receiving the two thousand dollar gift from Father.  Daughter had provided numerous services for Father and Wife in the months prior to the gift. Daughter wrote out the check and signed it under Father's direction in the presence of Wife.  Accordingly, we find no evidence that Daughter in any way coerced Father regarding these transactions.

Daughter's actions are, however, subject to the Tennessee Uniform Durable Power of Attorney Act, pursuant to §36-4-108 and §36-4-109 of the Tennessee Code.  These statutory provisions provide a general listing of acts a person may or may not do when acting pursuant to a power of attorney.  Wife argues that Daughter violated §34-6-108(C)(1) and (6), which limit, among other things, the attorney in fact from making gifts or grants or changing a right of survivorship.[4] However, Wife fails to consider that the document granting Daughter power of attorney expressly provided that Daughter had power to carry out all of Father's personal business. [5]  Pursuant to § 34-6-108(b), the person granting the power of attorney can broaden or limit the powers of attorney in fact.[6]  As previously noted, all of Daughter's actions pursuant to the power of attorney were consistent with Father's intentions.  Accordingly, Daughter's actions did not violate the Tennessee Uniform Durable Power of Attorney Act.

---

[4]Tenn. Code Ann. §34-6-108 provides in relevant part:
(c) Nothing contained in this section and § 34-6-109 shall be construed to vest an attorney in fact with, or authorize an attorney in fact to exercise, any of the following powers:
(1) Make gifts, grants, or other transfers without consideration, except in fulfillment of charitable pledges made by the principal while competent;
(6) Change, add or delete any right of survivorship designation on any property, real or personal, to which the principal holds title, alone or with others;

[5]The Power of Attorney provides Daughter with the power to "execute and perform all and every other act and acts, thing or things in law needful and necessary to be done in and about the premises and to conduct all of my personal and business affairs that same as I could do if acting personally and do and perform all acts necessary to carry on said personal or business affairs as fully, completely and amply, to all intents and purposes as I myself might or could do if acting personally..."

[6]Tenn. Code Ann. §36-4-108(b) provides in relevant part:
 Nothing contained in this section and § 34-6-109 shall be construed to limit the power of the principal either to:
(1) Grant any additional powers to the attorney in fact, including any powers otherwise excluded under subsection (c)

As a final issue, we find it appropriate to address Wife's position as surviving spouse in relation to Tennessee Code Annotated §31-1-105.[7] Pursuant to this statute, a fraudulent conveyance made for the purpose of lessening the surviving spouse's share can be voided by the surviving spouse. In order to determine whether the donor-spouse had a fraudulent intent, all of the facts and circumstances surrounding the transfers must be considered. McClure v. Stegall, 729 S.W.2d 263, at 265 (Tenn. Ct. App. 1987) citing Warren v. Compton, 626 S.W.2d 12, 17 (Tenn. Ct. App.1981). In particular, the court must consider the following factors: whether the transfer was made without consideration; the size of the transfer in relation to the decedent's total assets; the time between the transfer and the decedent's death; relations which existed between decedent and surviving spouse at the time of the transfer; and the source from which the property came. Sherrill v. Mallicote, 57 Tenn. App. 241, 417 S.W.2d 798 (1967).

In the case at bar, we are persuaded that Father had no intent to defraud Wife of her share of the estate. Although the transfers of the CDs were made without consideration, these transfers do not reflect Husband's intent to defraud Wife. Instead, they reflect only Husband's wish that the majority of his estate be divided among his children. From all accounts, it seems that Husband and Wife enjoyed a stable relationship. Wife was aware of the contents of Husband's will and was present when Husband stated his wishes at the family meeting. Wife was also present when Husband provided Daughter with the gift check of two thousand dollars. These actions did not reflect an intent to defraud Wife. In addition, Wife owned and maintain her own property as well as receiving property from Husband at his death. See Finley v. Finley, 726 S.W.2d 923 (Tenn. Ct. App. 1986) (Evidence supported finding that husband's establishment of joint bank account with his children from a prior marriage was not made fraudulently, with an intent to defeat present spouse's elective share of estate; therefore, joint bank account was not void.)

After a careful examination of the record, applying the above principles, we find that there is no evidence of any intent by the Husband to defraud Wife by the transfer of any assets. Accordingly, the trial court's decision as to these assets is correct.

---

[7]Tenn. Code. Ann. § 31-1-105 provides: Any conveyances made fraudulently to children or others, with an intent to defeat the surviving spouse of his distributive or elective share, is voidable at the election of the surviving spouse.

# CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs of appeal are taxed to Appellant, Jack Davis[8], for which execution may issue if necessary.

.

_____
ALAN E. HIGHERS, JUDGE

---

[8]Jack Davis was substituted as the appellant by this Court's order dated February 28, 2000 inasmuch as the original appellant, Julia Mae Riggs, is now deceased.